Stephen Lewis LOMBARDO, a/k/a
Harvey W. Stone, Appellant,

v.

STATE of Indiana, Appellee.

No. 681S154.

Supreme Court of Indiana.

Dec. 28, 1981.

Woodrow S. Nasser, Terre Haute, for appellant.

Linley Pearson, Atty. Gen., Kathleen G. Lucas, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

On May 25, 1979, appellant Stephen Lewis Lombardo a/k/a Harvey W. Stone, withdrew a former plea of Not Guilty and entered a plea of Guilty to a count of Murder. On June 11, 1979, judgment was entered and Appellant was sentenced to a period of forty (40) years imprisonment. On September 16, 1980, appellant filed a Petition for Post-Conviction Relief. Hearing was had on the Petition on October 31, 1980 and the Petition was denied. This appeal follows denial of Appellant's Motion to Correct Errors.

On February 10, 1979, Town Marshal John Waterman and Investigator Jay Hood stopped a blue Plymouth automobile as it was travelling through Farmersburg, Indiana. The driver appeared to be intoxicated as the car weaved on the street. Shortly after the car was stopped by Waterman and Hood, Town Marshal Clarence Kistner arrived on the scene as did Deputy Sheriff Murl Singleton and Town Marshal Donnie Daniels. Stephen Lewis Lombardo a/k/a Harvey W. Stone, appellant, and Mike Nelson were the occupants of the blue Plymouth. Kistner was asked by Murl Singleton to explain a breathalizer test to appellant and they walked over to Kistner's police car. Kistner tried to get Appellant into the car. Appellant refused and kept saying that he needed to go to the bathroom. Daniels and Singleton told Kistner not to let him go because they were afraid that he might be using this as an excuse to "flush some dope" or "he could have had a gun." When told that he could not go to the bathroom Appellant kept saying that he would not go to jail. He shoved Kistner and tried to go around him. He then grabbed Kistner's .357 Magnum service revolver which was snapped into a holster on Kistner's right side. They struggled for control of the gun. Singleton and Waterman tried to aid Kistner. Appellant gained control of the weapon and pulled the trigger. The gun discharged into Kistner's face. He fell to the ground dead. Appellant continued to try to pull the trigger after Kistner had been shot.

Pursuant to a plea agreement with the State Appellant asked to change his plea of not guilty to one of guilty. The judge questioned Appellant extensively as to whether he was voluntarily and freely changing his plea. He responded that he understood the rights explained to him and that he wanted to plead guilty. Appellant then admitted that he had knowingly and intentionally shot and killed Clarence Kistner.

Appellant raises two main issues for our review on appeal. He claims that the trial court erred when it denied his Petition for Post Conviction Relief because his guilty plea was accepted without an adequate factual basis and his guilty plea was not voluntarily and intelligently made.

I.

Appellant claims that the trial court failed to establish a factual basis for the entry of his plea of guilty to the charge of Murder. The court must comply with Ind. Code 35–4.1–1–3 (Burns 1979 Repl.) and Ind.Code 35–4.1–1–4 (Burns 1979 Repl.) in accepting a guilty plea. Ind.Code 35–4.1–1–3 (Burns 1979 Repl.) provides:

"The court shall not accept a plea of guilty from the defendant without first addressing the defendant and

(a) Determining that he understands the nature of the charge against him;

(b) Informing him that by his plea of guilty he is admitting the truth of all facts alleged in the indictment or information or to an offense included thereunder and that upon entry of such plea the court shall proceed with judgment and sentence;

(c) Informing him that by his plea of guilty he waives his rights to a public and speedy trial by jury, to face the witnesses against him, to have compulsory process for obtaining witnesses in his favor and to require the state to prove his guilt beyond a reasonable doubt at a trial at which the defendant may not be compelled to testify against himself;

(d) Informing him of the maximum possible sentence and minimum sentence

for the offense charged and of any possible increased sentence by reason of the fact of a prior conviction or convictions, and of any possibility of the imposition of consecutive sentences;

(e) Informing him that the court is not a party to any agreement which may have been made between the prosecutor and the defense and is not bound thereby."

Ind.Code 35–4.1–1–4 (Burns 1979 Repl.) provides:

"(a) The court shall not accept a plea of guilty without first personally addressing the defendant and determining that the plea is voluntary. The court shall address the defendant and determine whether any promises, force or threats were used to obtain the plea.

(b) The court shall not enter judgment upon a plea of guilty unless it is satisfied from its examination of the defendant that there is a factual basis for the plea.

(c) A plea of guilty shall not be deemed to be involuntary under subsection (a) of this section solely because it is the product of an agreement between the prosecution and the defense."

The trial court questioned the appellant as to whether he had been treated for or was suffering from any mental or emotional disability and whether he was under the influence of alcohol or drugs. The appellant answered no to these questions. The court then advised him in detail and specifically enumerated his rights. Appellant responded that he understood his rights and that he understood he was giving up rights by pleading guilty. The record shows that Appellant was fully advised of his rights and Appellant is not arguing that he was not so advised. Rather, he claims that the court accepted his guilty plea without an adequate factual basis as required by Ind. Code 35–4.1–1–4(b) (Burns 1979 Repl.). He argues that the required intent was not shown, offers theories regarding the shooting and the angle of the bullet, and cites authorities which hold that a guilty plea should not be accepted when accompanied by protestations of innocence. He claims

that his counsel's statements at the sentencing hearing to the effect that the defense was prepared, had witnesses to present and that a jury might have acquitted him, amount to a protestation of innocence which should have prevented the trial judge from accepting the guilty plea. There is no merit to these arguments.

The record clearly shows that the appellant was fully advised of his rights and was questioned thoroughly in regard to his understanding of them and the effect of his plea of guilty. The following record is relevant to the issues presented in this appeal and set out in part, the court's questioning and the appellant's answers.

"COURT: You do have your attorney with you.

MR. LOMBARDO: Yes, sir, Mr. Nasser.

COURT: Do you understand that the charge to which you are pleading guilty is murder?

MR. LOMBARDO: Yes, sir. I do.

COURT: And that in order to be guilty of this charge you must have knowingly or intentionally killed another human being to-wit: Clarence M. Kistner by shooting the said Clarence M. Kistner in the head with a handgun.

MR. LOMBARDO: Yes, sir.

COURT: Do you understand that the maximum possible sentence for a crime of murder in the State of Indiana is forty years and that the minimum possible sentence is thirty years?

MR. LOMBARDO: Yes, sir, I do.

COURT: And that the Court could impose a maximum sentence? Do you understand that?

MR. LOMBARDO: Yes, sir. Yes, sir.

\*    \*    \*

COURT: Mr. Lombardo, the recommendation of the Prosecuting Attorney indicates that you are, you and the Prosecuting Attorney and your attorney have reached an agreement as to what the Prosecutor will recommend to the Court as a sentence and final disposition herein?

MR. LOMBARDO: Yes, sir.

COURT: I now advise you the Court is not a party to such agreement and is not bound by any such agreement and recommendation provided that if the Court accept the recommendation then the Court is bound by its terms and if the Court does not accept the recommendation you may withdraw your plea of guilty, judgment or conviction will be vacated. A plea of not guilty will be reinstated and the recommendation of the Prosecutor and pre-sentence report of the Probation Department shall not be admissible in evidence or made a part of the official record. Do you understand this?

MR. LOMBARDO: Yes, sir, I do.

COURT: I further advise you that if I accept the plea of guilty and enter judgment of conviction on such plea, I am not thereby accepting the recommendation of the Prosecutor and the plea bargain. I will decide whether to accept or reject the plea bargain in this cause after I have received the pre-sentence report of the Probation Officer and after hearing evidence on the recommendation. Do you understand that?

MR. LOMBARDO: Yes, sir, I do.

COURT: Mr. Lombardo, have you or anyone else received any promise other than any plea agreement or been given anything of value to induce you to plead guilty to this charge?

MR. LOMBARDO: No, sir, I have not.

COURT: Have you or anyone else been offered any leniency or special treatment other than any plea agreement, to induce you to enter a plea of guilty to this charge?

MR. LOMBARDO: No, sir.

COURT: Has anyone forced or threatened or placed you or anyone else in fear to induce you to plead guilty to this charge?

MR. LOMBARDO: No, sir.

COURT: Do you feel that your plea of guilty is your own free and voluntary act?

MR. LOMBARDO: Yes, sir, I do.

COURT: Are you satisfied with your attorney and do you feel that he is properly representing you?

MR. LOMBARDO: Most definitely.

COURT: Do you still want to plead guilty to murder?

MR. LOMBARDO: Yes, sir, I do.

COURT: Mr. Lombardo, tell me in your own words, what happened on . . . .

MR. MONK: February 10th

COURT: February 10th of 1979 at the place of this occurrence.

MR. LOMBARDO: Ah, there was just a scuffle and I got hit a couple of times and I got called a son-of-a-bitch a couple times and I just lost control of myself. Then when I seen the gun I just grabbed it and shot him.

COURT: That is clearly in your mind.

MR. LOMBARDO: Yes.

COURT: Mr. Monk, do you have any questions you would like to ask the defendant?

MR. MONK: No, sir. The State has no questions at this time.

COURT: Does the defendant's attorney have any questions they wish to ask of the defendant?

MR. NASSER: No, Your Honor.

COURT: The factual basis as your heard the defendant to give then Mr. Prosecutor, is that satisfactory to you?

MR. MONK: Yes, your Honor.

COURT: Mr. Lombardo, do you now say that on the 10th day of February, 1979, you did commit, commit the offense of murder?

MR. LOMBARDO: Yes, I did.

COURT: Mr. Nasser, as attorney for the defendant can you see any advantage the defendant if this cause, to the defendant if this cause were to proceed to trial?

MR. NASSER: Your Honor, after counseling with Mr. Lombardo and ah, his explanations of the facts involved, after reviewing the statements from various witnesses, Mr. Lombardo has indicated to me that this is what he wants to do and I've advised him of his legal rights what I feel his legal chances are and he has made sole decision, so for me to add anything to this at this point I think would be moot.

COURT: I see. Mr. Lombardo, the Court now finds that the—that you understand the nature of the charge against you to which you have plead guilty, that you understand the possible sentence thereunder, that the plea was made freely and voluntarily, that the plea is accurate and that there is a basis in fact for defendant's offered plea of guilty. The Court now accepts the plea of guilty and finds the defendant guilty of said charge . . . ."

It is clear from the record as set out above, that neither appellant's attorney nor the appellant made any claim that he was innocent. It is also apparent that any arguments or defenses that could have been offered at a trial were waived by the plea agreement and the voluntary, knowing guilty plea.

■ In *Lloyd v. State* (1979) Ind., 383 N.E.2d 1048 this Court discussed the requirements for finding a factual basis for a plea. It was held that a defendant's admission that he understands the nature of the crime charged and understands that his guilty plea is an admission that he committed the crime is sufficient to establish a factual basis for entry of the guilty plea. Here, the appellant stated that he understood the elements of the crime with which he was charged, and that he understood that by entering his plea he was admitting the intentional killing. This is sufficient to establish a factual basis for acceptance of his guilty plea. In addition, the appellant here stated the facts that he lost control of himself, and when he saw the gun he "grabbed it and shot him." There is no error on this issue.

## II.

■ Appellant also claims that his plea of guilty was not entered voluntarily or intelligently because his plea was motivated by his desire to avoid the death penalty. He claims that he was afraid because he had been in Sullivan County for only about four days, had a felony record and did not feel he would receive a fair trial. He claims that he became more concerned about the trial and a possible death penalty when he heard news that Spinkelink was electrocuted in the State of Florida.

About twenty (20) days prior to the Post Conviction Hearing Appellant was examined by Dr. Gene D. Moore, who testified that he had examined Appellant to determine his state of mind at the time of his plea. It was his expert opinion that at that time Appellant suffered from psychotic thinking and that Appellant was paranoid toward our judicial system because of his past involvement with law enforcement. He also stated that Spinkelink's execution contributed to Lombardo's decision to enter a plea of guilty to the charge of Murder since he felt that that was the only way to escape the electric chair.

The United States Supreme Court has held that a plea of guilty which is made in order to avoid the death penalty does not amount to an involuntary plea. *See, North Carolina v. Alford*, (1970) 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162; *Brady v. United States*, (1970) 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747.

As was discussed and set out in Issue I, *supra*, it is apparent that appellant's guilty plea was voluntarily and intelligently given. It was not extracted by threats or violence or improper influence. The record shows that the defendant was informed of his specific rights and relinquished them.

Appellant's claim that his plea of guilty was involuntary because he suffered from psychotic thinking and delusions is not persuasive. In *McGuire v. State*, (1980) Ind., 414 N.E.2d 294 the appellant claimed that his plea of guilty was involuntary because his father had also been arrested, jail conditions were intolerable and he had epilepsy. Appellant McGuire pled guilty to armed robbery in exchange for the dismissal of a charge of kidnapping. Our Court held that:

"[H]is acceptance of the plea agreement, and his plea of guilty were not likely to have been the coerced product of jail conditions, family problems, or his illness, but was more likely to have been the product of an aware and alert mind acting in furtherance of his own interest

in avoiding a trial and conviction on the kidnapping charge which at the time carried a life sentence."

414 N.E.2d 294 at 295.

It also appears so here, that Appellant did not enter his plea because of delusions, but rather because of his desire to avoid the possibility of a greater penalty. There is no error on his issue.

Judgment affirmed.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.